Thank you. Good morning. May it please the court and counsel, Philip Thonis on behalf of the State of Oregon, the petitioner in this mandamus proceeding. I would like to reserve two minutes of my time for rebuttal. Very well. In order to remove this state criminal prosecution to federal court on a claim of supremacy clause immunity, defendant was required to allege facts demonstrating that his conduct in driving through the intersection without stopping was necessary to carry out his duties as a federal officer. Defendant did not do that. Rather, the evidence in the record shows the opposite. There was no exigency or emergency that required defendant to violate state traffic laws in order to carry out his federal duties. The district court therefore clearly erred in allowing removal and this court should grant the state's mandamus petition and order the district court to remand the prosecution to state court. Well, it all comes down to this use of no urgency, it seems in your briefing, but there's a lot of other testimony in the record from other officers and the fact that he was trying to catch up with the other people on the team in order to do the surveillance. So in my view, and something I'd appreciate your comments on, is we're here on a mandamus, which is of course a pretty high standard to overturn, and the only thing that the officer needs to show is a colorable defense. So I'd appreciate your response to those two things, because I think we're pretty familiar with how the issues converge here. Sure, of course. Yeah, I agree that on the mandamus issue, the state's burden is to show the district court clearly erred. I think the parties agree about that. Getting to the pleading requirement, which the Supreme Court articulated in Mesa, defendant has to allege not just a federal defense, not just a defense of supremacy clause immunity, but a colorable federal defense. In the state's view, that has to be akin, because it's a jurisdictional requirement, that has to be akin to the Rule 8 pleading standard. So defendant must do more than simply say, I intend to prove at a later time that my conduct was necessary and proper. So we're looking at the facts. We're not here on a dispute of facts. We're taking all the facts as true, and we're asking, if all of these facts are true, if the fact finder finds all of these facts in defendant's favor, is defendant entitled to supremacy clause immunity? And that is pointing to the grand jury testimony where defendant and the other officers in the surveillance team that day all uniformly testified that there was no urgency, there was no emergency. And so in the state's view, that as a matter of law, demonstrates that violating state traffic law in that circumstance was not necessary, not objectively reasonable. Can you tell us what the status is of the case? Because technically it's in federal court now. Right. What is going on in the case right now? My colleague can correct me if I'm misunderstanding, or if I have this wrong. I believe the federal district court has stayed for the proceedings to wait for this court's decision on the state's mandamus petition. Now, I imagine opposing counsel is going to go up here and say, look, this is mandamus review, extremely deferential to district court. And on top of that, it's colorable defense. So you almost have like a double deference here, in a sense, because it's not just they have to have a winning defense, it's a colorable defense. And then we're reviewing that under the very strict mandamus rules we have here. You'll have rebuttal, but give me a preview. What's your response to that argument? Because I know they're going to make it. I guess I would push back a little bit on the double deference. I'm not sure that deference comes into play on the question about whether defendant alleged a colorable federal defense. It's defendant's burden to do that. The district court made a legal ruling and the clear error standard is a high one, of course. But the underlying issue about whether defendant did allege a colorable defense is that's defendant's burden. Defendant had the opportunity to put on evidence at the evidentiary hearing the party stipulated to the evidence in the record at that point. And so that's simply a question of did defendant meet that pleading requirement? And I'm not sure. Of course, the state agrees that defendant doesn't have to prove his defense at that stage. He doesn't have to carry his burden of proof on any of the factual allegations. But that is a legal question that defendant is required to meet at the removal stage. And in our view, he did not do so. There seems to be some conflation of standards to the extent you talk about and focus on urgency with legitimate justification. But are you almost suggesting that there needs to be a necessity for him to have run the light or run the stop sign? Yes, yes, definitely. So the test for supremacy clause immunity, the second prong of that test, and this goes all the way back to the 19th century from the Supreme Court's decision in In re Nagel, the second prong of that test expressly requires that the federal officer's conduct be necessary and proper to carrying out their duties as a federal officer. And so putting that in the context of a traffic violation case, and we point to the sister circuit's decision in North Carolina versus Cisneros, which is that when a federal officer violates state traffic law, their conduct will only be necessary in that circumstance when there is some urgency or emergency that requires them to do so, to carry out their federal duties. But absolutely, the necessity requirement comes straight from the case law and is absolutely a requirement for carrying, ultimately carrying the defense, but it's certainly a recipe at the removal, it's part of the recipe at the removal stage. And there have to be factual allegations that would demonstrate that defendant meets that aspect of immunity. So the necessity, though, if there's not an urgency, there still could be a necessity given the other officer's testimony. So how do you square those two? I think the idea of an emergency or exigency is putting a finer point on what necessity means in the context of a traffic violation. So necessity, of course, could take many forms in many different contexts, depending on what the conduct is that gave rise to the state charges, but when that conduct is a violation of state traffic law, that is where the requirement that the conduct be necessitated by an emergency or an urgency, some sort of urgency, probably an emergency or an exigency. And the case law talks, gives examples such as hot pursuit, even executing a search warrant or an arrest warrant, things of that nature. Well, and then they do go on to explain, though, that they were in hot pursuit of this guy, but that it took a lot of officers, given the situation, and also not to alert him, and they're trying to make a net in effect, and this guy's falling behind, he needs to catch up so he can be part of this configuration. So the question I have is whether he's, not whether he would win on that, because obviously we do know what A. Grand Cherie did in Oregon, but is that tolerable for him to say, look, when you put it all together, there's enough of a necessity or urgency? Well, I'm into my rebuttal, but I guess I would direct this court's attention to the Grand Jury testimony. I don't think there's any dispute on this point between the parties. The testimony at the Grand Jury was that there was no urgency and that there was no hot pursuit. So I guess I want to make that clear for the court. The officers and the federal agents in this surveillance team were certainly, you know, trying to keep contact with this suspect, and one of them had a visual of the suspect, and they were all in communication by radio, but the clear testimony at Grand Jury was that there was no emergency or urgency at the time of the crash. And I'll save my remaining time for rebuttal. Very well. Well, if we could give him two minutes for rebuttal. Thank you. You got it. One second here. Good morning. May it please the court. Amy Potter on behalf of Special Agent Sam Landis, the real party in interest. The state said that this is about whether taking all the facts in the favor of the defendant, he can show he's entitled to sovereign immunity. That is not the question here. The question is whether taking all the facts at the pleading stage, Special Agent Landis has shown a plausible defense of immunity. And he has. Because we're not here to evaluate the success of the motion to dismiss. We're here to evaluate whether he presented a colorable or a plausible defense. Taking all the facts on the record, the district court decided that he had, that it was plausible. He said, look, if he can show all of this at a motion to dismiss, if he can show that there was a reasonable belief that running the stop sign was necessary for this purposes of surveillance, then he would win. But the district court also made clear that it wasn't deciding that fact today. It was only deciding whether he gets to the next stage. And that's the point of removal, is to get Special Agent Landis into federal court so that the federal court can evaluate this immunity defense. I would also take issue with the notion of, that we agree there's absolutely no urgency. We agree there was no sirens. The testimony is clear. There was a certain level of urgency. This is not driving to deliver mail. This is surveillance. Surveillance of a fentanyl dealer in the community who was driving erratically. And there was a necessity to keep up with the team. And so Special Agent Landis made a decision. It was a mistake of judgment. We know that. It was a tragedy that happened. But he made that reasonable decision in the context of law enforcement surveillance, that is markedly different than just driving a convoy or driving a postal truck. And so the question also is not, I believe the state said, was it necessary to do that? It's whether he reasonably believed it was necessary at the time, knowing the facts that he knew. Everybody can say right now, that wasn't the right decision. We know that, because we know what happened. But what did he know at the time? Was it reasonable given everything that he knew about the surveillance, about the need to stay in touch with the team, about the dangerousness of this fentanyl dealer? All of that given, was it reasonable? And that question will be answered at the motion to dismiss. Because really right now, the question is just, is it plausible to believe that it could be reasonable? And the district court who took, had the pleadings, all the grand jury testimony, the DEA operation plan, and the DEA policies, looked at all those facts and decided, yes, there's nothing illogical, there's nothing implausible about the district court's conclusions. So you would equate plausibility with colorability, I take it? Yes. And that comes, I mean, the court that's analyzed this the most was the Fifth Circuit in the Klinehart case. And that's, I think, the best definition. As the court's aware, there's not a lot of case law on this. So it's a very interesting issue. I've been asked many times to define colorable and give a case, and it's not that easy. So, but Klinehart, I think the other case that gives us some indication is the Meadows case, which is the recent D.C. Circuit case that was cited in the defense brief. That dealt with a different issue, dealt with whether it was under the color of law. But what the court there said was, look, we don't have to take everything at face value, but if you have a plausible response, two plausible responses, you credit the removing party. So in this case, there's a plausible argument that Special Agent Landis was acting reasonably and that it was objectively reasonable. The state says, no, it wasn't. In that context, you give credit to Special Agent Landis, and we get to the next stage, which is the motion to dismiss. And again, I think this court said, and the district court said, we don't know how that's going to turn out. The question is just whether we get there. And then procedurally, if, let's say, we do get there, would the state have another chance to challenge this? Because, I mean, mandamus is a very tough standard. Is there another opportunity for them to challenge this on a more de novo-ish footing, or is this it? No, actually, I think there is. In the Klinehart case, the defendant there won the motion to dismiss. And when Texas appealed, they challenged both subject matter jurisdiction at the outset and then the motion to dismiss. Now, I will say Texas lost, but the Fifth Circuit took both steps. They started with the subject matter jurisdiction, looking at the removal. Once they decided that that removal was proper, they turned to the question of the motion to dismiss and made that decision. Was that a civil case? No, that was a criminal case. So I do think they can challenge it again if we're successful in the motion to dismiss. I suppose we would be able to appeal a denial of a motion to dismiss, and they could cross-appeal on subject matter jurisdiction as I do think, if this remains in federal court, we will be back before this court. There's no question about this. There's very little law on this. This is certainly an important issue. But right now, we're in a mandamus. And the district court, there's no evidence the district court clearly erred. The district court had all the evidence, examined it carefully, and it's not implausible or illogical what the district court did. So following Judge Owens' question down the line, you file a motion to dismiss, excuse me, the state files the motion to dismiss, and that's denied. Okay? Yes. So then what happens? We are entitled to appeal just like, well... A denial of a motion to dismiss? Yes, because it's a denial based on immunity. So much like... So it is based on immunity. Yes, so I'm sorry. We would move to dismiss based on sovereign immunity. We say he's from prosecution. We believe that would equate to a denial of qualified immunity, which is appealable. It would then come up on an interlocutory appeal at that point before there is a trial? Yes. And if the court said, no, this is not equivalent to an interlocutory appeal, then what would happen? There would be a trial. It would be conducted in federal court, but state it just would be happening in federal court. And that's, again, that's what Congress decided. When these types of actions, crimes that are charged based on the duties of... When they are engaged in their official duties, those are to be heard in federal court. He was acting as a special agent. He was conducting surveillance and he reasonably believed, and the testimony from all the officers is that it is reasonable to violate traffic laws during surveillance. He's now been charged with a state crime. He's entitled to have that removed. He's entitled to file his motion to dismiss. If he's not successful, he's entitled to be tried in federal court. That's what Congress has said. That's the purpose of the removal statute. If the court has no further questions. Thank you. Thank you, counsel. Thank you. Just a couple of points. Because the district court held an evidentiary hearing and the parties stipulated to evidence, the state believes, and we cited this court's decision in Lighty versus Crane Company. We're a little bit beyond looking at the removal petition. We are now asking, taking all the facts as true and in the light most favorable to the defendant, is defendant entitled to... Would defendant be entitled to prevail on his claim of immunity as a matter of law? And our answer to that is no, which therefore means that removal can't be proper because the district court does not have jurisdiction. There was a question. I'm sorry, I don't remember which one of you asked it. Would the state have another opportunity to challenge defendant's claim of immunity? Certainly the state would at the motion to dismiss stage. At this point, though, the remedy that the state is looking for is not... We're not seeking to combat defendant's claim of immunity. We're seeking to get this case back into state court. So that's really the remedy that the state is seeking at this point. But you would agree with her that, let's say it doesn't go your way today, it's not over as far as the state is concerned? It might be over as far as getting the case back into state court, but certainly the prosecution and the fight over defendant's claim of immunity would not be over. And that you're still hoping to have a trial somewhere, maybe not in state court, but you still have... You're ready to go to trial in this case, whether it's federal court or state court. You want to be in state court. Yes. I think that's all I have, unless the court has any other questions. We would ask this court to grant the state's mandamus petition. Great. Thank you. Thank you very much to both of you for your briefing and argument in this very interesting case. This matter is submitted and we'll now let counsel for the next case come forward.
judges: McKEOWN, BEA, OWENS